Our next case for argument is F.C. Bloxom Company v. Tom Lange Company. My name is Katie Esquivel, and I represent the appellant, F.C. Bloxom. Today we seek reversal and remand of the District Court's order adopting the findings of the United States Department of Agriculture in a contract dispute between 7Cs and F.C. Bloxom. In appealing the decision of the USDA to the District Court, Bloxom was finally entitled to have the opportunity to conduct a meaningful discovery on the single piece of evidence that the USDA relied upon in rendering its decision in favor of 7Cs. That evidence specifically is what the USDA characterized as the unrebutted affidavit of Mr. Jason Lay, an employee of 7Cs. That opportunity never occurred. The District Court here erred in two pivotal ways. First, it ignored the clear record of disputed material facts, making summary judgment both premature and misguided. Second, the District Court deprived Bloxom of thorough and rightful discovery. It did this in three ways. First, by failing to rule on Bloxom's pivotal second motion to compel, by ignoring Bloxom's two Rule 5060 motions, and by its inaction, the District Court condoned the deceitful and misleading tactics by both 7Cs and Jason Lange that deprived Bloxom with fair and adequate access to essential evidence. This case presents this court with a question of whether litigants are entitled to fair, relevant, and complete discovery before summary judgment is entered against them. Can I ask you a question before you get too far on the merit? Certainly. How does appellate jurisdiction with respect to this court? I know that the of the Perishable Agricultural Commodities Act says that the District Court of the United States for the district in which the party of complained of is located is the proper jurisdiction for the appeal, as you will, to the District Court. Why isn't the party complained of here Bloxom, and Bloxom is headquartered in Seattle, Washington, or at least has, you know, that's its principal place of business or major place of business in the United States. So how does this end up in the Central District of Illinois? Are we confident we're in the right court? Yes, Your Honor. And the reason for that is because 7Cs initiated the formal reparation action before the USDA. In response, Bloxom answered that complaint and also filed a counterclaim. And so Bloxom is appealing the loss on its counterclaim, and so the adverse party is in fact 7Cs, which is located in the Central District of Illinois. Okay. So even if you're mistaken about that, it's not clear to me that that's a jurisdictional limitation as opposed to a, you know, kind of a venue provision embedded within a jurisdictional provision. Understood. Yeah. The reason I ask that is this is a statute that I've not seen before, and I know you've seen it a lot. Can you just spend maybe one minute on the legal framing here? If you all had to do it all over again, I wish you would both spend more time on that. Certainly, Your Honor. Because if you read the briefs here, I think you could be quite mistaken and think, this looks like a breach of contract case. Looks like a diversity jurisdiction breach contract case. And it is. The Perishable Agricultural Commodities Act provides a host of remedies for produce sellers, and it also, a component of the statute, also provides a dispute resolution process through the United States Department of Agriculture. It's intended to disputes. And it first begins at an informal stage where there's an exchange of documents. The USDA renders an informal decision. Here, blocks have prevailed at that stage. And if a party is unhappy with that outcome, it can then initiate what's called a formal proceeding. Right. I follow all that until we get into the district court, and the argument is that there it's a little bit more than that, Your Honor, if I may. At the formal stage, the parties exchange written documents. There is no in-person hearing. There are no subpoenas. There is no discovery. The parties submit their own paperwork, and a hearing officer in Washington, D.C. adjudicates the dispute. And here, Bloxham was representing itself pro se. It won at the informal stage and felt that it was going into the formal stage in good hands. And Mr. Bloxham represented the The USDA said, well, there were three people who formed this contract. They were Bloxham's Brian Bernard, its former salesman, Alejandro Hernandez, and Mr. Jason Lay from Seven Seas. And since Bloxham did not have any opportunity to conduct discovery with Mr. Hernandez, who had since left the company, or Mr. Lay, Bloxham made the choice to appeal that decision to the district court so that it would have the opportunity to conduct discovery and have a full factual finding and an actual trial on the merits, a trial de novo. Yeah, I follow it. Does that answer Your Honor's question? I mean, do we even know what law applies? If it's a contract dispute, are we talking about Illinois law, California law, Washington law? Does it not matter? The USDA was not particularly clear, and for our purposes, it doesn't matter. The statute under 499GC, the statute says that the review and that the appeal to the district court proceeds as in any other civil case. So the legal findings of the USDA have significantly less importance than the factual findings. So here, the case presents the question to this court of whether or not litigants are entitled to a fair shot at discovery before summary judgment is entered against them. Here, although the USDA's decision relied exclusively on what the USDA characterized as the unrebutted affidavit of Mr. Jason Lay, Mr. Jason Lay's affidavit was for all practical purposes unrebutted. He was subpoenaed to appear for deposition. He attended his deposition for 173 minutes, including the argument of counsel, when he walked out prematurely ending that deposition, and he was never compelled to return. This was not a technical oversight by the district court. This was a dereliction of the district court's duties to ensure fairness and to ensure that both parties had an opportunity to conduct discovery. I don't read it as quite that harsh. I thought the district court said, especially in its alternative reasoning, I just don't see how it matters. Because in substance, if I have the dates right, on August 13th of 2018, your client effectively had a full and fair opportunity to realize that the onions had not received certification and therefore could have stopped the shipment. And nothing Mr. Lay would say or not say in the deposition would change that fact. In other words, your client knew on August 13th that it had not received either a copy of or evidence of the existence of the certificate. And nothing about Mr. Lay is not an employee of Bloxham, right? He's from 7C. That's correct. Okay. So nothing he would say in a deposition would alter that fact. So that's what seemed to me reading the district court opinion was important to the district judge. So I think that's what you have to overcome. Well, and my response to that is that the district court judge did not enforce the agreed order resolving Bloxham's first motion to compel. That order required both 7Cs and Mr. Lay to produce evidence of Mr. Lay's communication. Let me ask the question differently. Suppose you conducted a full deposition of Mr. Lay. What could he possibly say in the deposition that would alter the facts on the ground as of August 12th or 13th, 2018 vis-a-vis the certificate, the lack thereof? Well, what the district court overlooked is the fact that Mr. Lay and 7Cs was in exclusive control over the onions all the way. 7Cs didn't just drop the onions off at the gate to the port. 7Cs loaded them onto the ship. And in the meantime, 7Cs was also affirming to Bloxham that the after. We believe both. But again, Your Honor, we did not have an opportunity for full discovery. We did not receive... I don't understand what discovery could show that wasn't already in Bloxham's files. If Bloxham was told on a particular date that the certificate existed, Bloxham could show that from its own files. Well, that was a presumption by the district court. However, the record is empty on that issue. If the court would like me to explain it, I can. Bloxham is the plaintiff. And if the record is empty, that means Bloxham has not disclosed the contents of its own files. Don't we have a problem for the plaintiff? No, Your Honor, we don't. Because Bloxham responded to the discovery requests that It's not a question of responding to discovery requests. Bloxham needs to show a particular fact in order to prevail. It has that fact or not in its own files and chooses not to show that fact to the district court. That is what the district court found, but there's not evidence to support that. In fact, that presumes... I don't even understand the concept. You don't have evidence to support what Bloxham told the district court. Right. Bloxham either told the district court something or did not. That's correct. You don't prove that by separate evidence. Right. And we can prove that by evidence that either comes from Bloxham and assumes that there was no IT problems, that there were any record keeping problems on Bloxham's side, or we can obtain that from Seven Seas. And in fact, Seven Seas agreed to an order in January of 22 that it would provide those records to Bloxham. I think we're talking about two different things here. You're talking in part about the purchase order. Okay. In my view, what I can't understand is on August 13th, 2018, Bloxham, and I think this is what Judge Easterbrook is suggesting, on that date, Bloxham knows whether it has evidence that the onions have been inspected and certified, or it knows it does not have that evidence. Focus on that date. Right. The answer to that question in your client's knowledge is either yes or no. On that date, that doesn't depend upon what Mr. Lay says or doesn't say in the deposition. Oh, but it does because it also doesn't include industry custom. Remember, we're dealing with perishables. What Bloxham knows depends on what is in Bloxham's agents' files or heads, not on what Lay did. This is the message Judge Scudder and I are hoping to get you to address. Because Bloxham's records are not the complete record of everything that transpired between these parties. Did Bloxham put into evidence the fact that there was, say, a fire or that its computers have been thrown out? No, and we didn't have to because the district court did not rule on request to simply enforce an order. There's two ways of showing communications, a sender and a recipient. Bloxham has been transparent about that since the day this case was filed. And I see I'm running into my rebuttal time. The word I would choose is truculent, not transparent. Your time has expired, counsel. Thank you, Your Honor. Mr. Amato. Good morning. Just to address the subject matter jurisdiction point for a second. I think that the federal statute is clear that the federal courts have jurisdiction over disputes between buyers and sellers of fresh fruits and vegetables. Where venue lies is a different question. Where you can get jurisdiction over the defendant is a different question, personal jurisdiction. But there is jurisdiction because this is a case involving fresh fruits and vegetables. My client, 7Cs, which is Tom doing business, Tom Lang is doing business as, was a seller of onions. And therefore, under PACA, PACA applies. My client could have proceeded one of two ways. It could have brought a district court proceeding over to collect the $24,000 owed for the onions. We could have commenced that district court proceeding in the first instance. In any jurisdiction, we could have gotten personal jurisdiction over Bloxham. Bloxham is resident in Washington State. We could have sued it there. But my client did not proceed under that path under the statute. There is an alternative path that my client could proceed. And that is to commence an informal proceeding before the Secretary of Agriculture. And then if that is unsuccessful, it can then commence a formal proceeding and we can have a hearing before the Secretary of Agriculture. That determination then can be appealed to the district court. So I believe that that's the answer to your question, Judge Scudder. On the question also that you raised as to what law applies, I think that the law here is Article II of the Uniform Commercial Code. What are the terms of that contract? And that's what we needed to address here. Bloxham took the position— Article II of the Uniform Commercial Code is just a proposal by the American Law Institute, right? It's either enacted into positive law or it isn't. Is there some state in which it was enacted into positive law on which you are relying? I did address that in my brief, Your Honor. There are several states that would have adopted this. And there are several states that have modified some of the provisions in it. Yes, Your Honor. And Louisiana, which has never adopted it at all. Right, but Louisiana wasn't involved in this matter. Every other state seems to have been. The only point—I don't want to get aside—the only point I'm trying to make is when I come to this case and I look at the briefs and we start talking about the Uniform Commercial Code, it's not like a federal statute or something that's appended to this Agricultural Act, right? The only reason we'd be talking about the Uniform Commercial Code is because we're talking about the sale of goods. And that has to be relevant under one state or another state's law. And what I was trying to figure out is what state are we even talking about? We have several states here and they all have adopted the same provisions. So there is no complies. The transaction here happened with an oral call to 7C's office in Florida. Then there was a—the farmer was in California. The goods were delivered to Long Beach Port in California. Blockson was located in Washington State and Tom Lang was located in Illinois. As I pointed out in my appeal brief, all of those jurisdictions have adopted Article II and the provisions that we cited. Adopted it in the same language? The operative provisions that we cited in our brief, yes. So now to go back to the point here is that Blockson—there was a very fulsome record before the Secretary of Agriculture. The Secretary of Agriculture just did not rely—You do know what the meaning of fulsome is, don't you? It's basically—fulsome means obnoxiously long. When I double-sided it and I have a judge, it's this thick, double-sided. It's very long. For a $24,000 goods sold and delivered case that started with a simple phone call, there was an awful lot of papers that were submitted to the Secretary of Agriculture. So I consider on a relative basis that word definition applies here. Second, I think that we just didn't rely on the affidavit of Jason Lay. The allegation that was sworn to three times by Bill Blockson, the Secretary-Treasurer of Blockson, was that there were emails transmitting purchase orders to my client, to the personal email account of Jason Lay, and those purchase orders set forth that my client was supposed to obtain phytosanitary certificates and fax them to Blockson before loading and FedEx them to their jet stream freight forwarders, who was their agent that was email. I never received those purchase orders. That was the affidavit that was submitted. As it turned out, Blockson admitted they did not send the purchase orders on August 8th of 2018. They proceeded in this case and got an extraordinary amount of discovery based on several sworn statements that there were emails to Jason Lay's AOL account with the purchase orders. It turned out, in opposition to our motion for summary judgment, that there were no such emails, that they never delivered the purchase orders on or about August 8th of 2018. But it doesn't matter because when we moved for summary judgment, we assumed, for argument's sake, that my client was obligated to obtain phytosanitary certificates and faxed them to their freight forwarder. We therefore rendered irrelevant whether or not Jason Lay got or did not get these emails that they don't have a copy of and we didn't have, and we produced emails to show we didn't get them. It became irrelevant as to the discovery being sought because we assumed, for argument's sake, that the terms of this contract required my client to get the phytosanitary certificates and fax them to Bloxham at the time of loading. There is no material issue of fact that Bloxham did not have a fax. There is no material issue of fact that there was no FedEx. There's no material issue of fact that we didn't get the phytosanitary certificates. So now that you're a buyer, you are an exporter of record, you are delivering onions to Honduras, you are going to put three loads of onions on a container ship and send it to Honduras, and you don't have the necessary paperwork to import the goods into Honduras. Logic. Forget Article 2 of the Uniform Commercial Code, Your Honor. Logic would say, as the exporter of record, who has to deliver a phytosanitary certificate in Honduras to get the goods imported, that you would stand on that provision of the contract and insist that you have the phytosanitary certificate by fax and FedEx. They did not. They should have rejected the goods. They should have, and if they didn't have the phytosanitary certificate, they could have accepted them under a reservation of rights. They could have obtained their own USDA inspection at the port of Long Beach and put the goods on the ship. And finally, after they put the goods on the ship, there is no way for my client to cure this alleged defect. Under the law, that's a waiver of that condition under the sale contract. After the goods are on the water for nine days, on August 23rd, the record shows that there was some sort of a communication on August 23rd asking for the phytosanitary certificates. It's too late by that point in time. On August 27th, there is an email that's in the record that says, where are the phytosanitary certificates? The goods wind up going to Honduras. After they're rejected in Honduras, there is a letter agreement that Bloxham signs where Bloxham does not even purport to revoke acceptance of the goods. The goods get returned to Florida for my client to then try to sell them for Bloxham's account. The goods come in, the onions are rotten, they have to be destroyed. This is a simple case. Bloxham, as the exporter of record, didn't do what a buyer, any reasonable buyer would do if they had this condition precedent, and that would have been to ask my client and have an unequivocal record before this court that they asked for assurances of some sort before they took the irrevocable act of putting the onions on the ship. They did not do so. We believe that the secretary's decision was very well reasoned. We believe that the district court's decision was very well reasoned, and the district court did not terminate discovery proceedings. We moved in April of 2022. Bloxham had full knowledge of this argument that I just made to this court. Discovery continued into the end of July of 2022. Bloxham has had substantial opportunity in the district court, as well as this court, to answer the questions that I posed to this court as to it didn't reject the goods. Bloxham still doesn't have an answer to that question. They continue to insist that somehow, some way, Mr. Lay, who's a salesman in a small office in Florida, who was accused of getting an email that he never got, and they admit that he didn't get, and they accused him of committing perjury and affidavits and wrongful conduct and the like, why Jason Lay hasn't been harassed by Bloxham. This is an outrageous situation. Now, I must say, federal rule of evidence one, I think it's the first one. We're supposed to have the rules interpreted for the just, speedy, and inexpensive resolution of every case. Rule 56 is a summary judgment provision. I think it was properly applied here. I think that there are no questions of fact, and unless the court has a question for me, I will rest. Thank you, counsel. Thank you. Miss Yohannes. Good morning, your honors. Vanessa Yohannes on behalf of Appellee Jason Lay. I think the court has hit the nail on the head in asking whether any additional discovery from Jason Lay could possibly change the outcome as a matter of law that the district court opined on, and it cannot. There is no additional discovery from Mr. Lay that could possibly change this case and its track as a matter of law. Indeed, the PO orders, the purchase orders that the appellant Bloxham claims was sent to Mr. Lay, they have in fact conceded was never sent to Mr. Lay. Nothing changes that it is the appellant's responsibility to have ensured the necessary paperwork was obtained prior to the sale of that vessel for the onions, and nothing obtained for Mr. Lay could alter the results. It is important to highlight the amount of discovery that Bloxham has received from Mr. Lay. They have received all of his work emails, all of his personal emails. His phones were imaged and extracted. They have received an immense amount of discovery for a salesman in Florida when in fact, as Judge Easterbrook highlighted, if the email was sent, if the should have the purchase orders. They have yet to produce any of those materials because now they concede they don't exist. That was the only reason they were afforded due process to get discovery from Mr. Lay, and discovery therefore should be halted, and the district court was correct in halting it. I also want to note for the record that Mr. Lay did sit for a deposition. He sat for four hours. That transcript is nearly 200 pages in length, and he was pro se the entire time. He was not afforded the right to counsel. He tried to seek counsel, and the appellant refused to allow him additional time to get counsel. Having a pro se witness, a lay person, be deposed for four hours, and during those four hours you don't ask a single question, not once in that transcript is the word custom mentioned, not once in that transcript is the word industry norm mentioned, not once in that transcript is Alejandro Hernandez mentioned, not once in that transcript is Brian Bernard mentioned, yet here that appears to be the discovery they seek. They got four hours with Mr. Lay, yet they didn't ask a single question about any of that. By law, the district court was correct in opining for seven C's, and we ask that this court affirm their decision. If there are no further questions of me on behalf of Mr. Lay, I rest. Thank you, counsel. The case is taken under advisement.